ANN HERNANDEZ ET AL. *v.* MONTEREY VILLAGE
ASSOCIATES LIMITED PARTNERSHIP
(6267)

SPALLONE, DALY and FOTI, Js.

Argued November 7, 1988—decision released January 31, 1989

*Dennis J. O'Brien,* with whom were, *Richard Tenenbaum* and, on the brief, *John M. Boesen,* for the appellants (plaintiffs).

SPALLONE, J. The plaintiffs appeal from a postjudgment decision of the trial court denying their motions for attorney's fees and costs under the Connecticut Unfair Trade Practices Act.

The plaintiffs, three tenants residing in Monterey Village, an apartment complex in Norwalk, brought a class action under the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a through § 42-110q, on behalf of some 150 tenant families residing at the complex. In their complaint, the plaintiffs alleged that the defendant owner and operator of the complex was attempting to evict them and members of their class by initiating more than twenty summary process actions on the basis of nonpayment of rent and termination of lease by lapse of time, in violation of state and local law, of the United States Housing Act of 1937, and of an agreement between the defendant and the city of Norwalk housing authority entered into pursuant to Section 8 Moderate Rehabilitation Housing Assistance Payments Program, 42 U.S.C. § 1437f (e) (2). Specifically, the plaintiffs alleged that the defendant had brought the summary process actions in violation of agreements between the defend-

ant and the Norwalk Housing Authority which obligated the defendant not to terminate any tenancy solely because of expiration of the lease and which required it to follow specific notice procedures when taking action to terminate a lease. The plaintiffs also alleged that the dwelling units occupied by the class members were in a condition violating state and local housing laws and ordinances, that no certificates of apartment occupancy had been issued on the dwellings as required by city ordinance, and that the defendant was nevertheless attempting to evict them for nonpayment of rent, in violation of General Statutes § 47a-57 and city ordinance. The plaintiffs sought injunctive relief, damages, and attorney's fees.

The plaintiffs moved for a temporary injunction to bar the defendant from commencing additional summary process actions and from obtaining or executing any summary process judgments. On June 11, 1985, the day the parties were scheduled to be heard on the motion, they entered into a written stipulation to resolve "all claims for compensatory and punitive damages and injunctive relief raised in the plaintiffs' complaint." Pursuant to the stipulation, the plaintiff class was certified, and the defendant agreed (1) to accept from the class members half of the current charge for rent, (2) to waive all claims for back rent and use and occupancy, (3) to withdraw all pending summary process actions, (4) to refrain from commencing any new summary process actions based on lapse of time or nonpayment of rent, (5) to obtain certificates of apartment occupancy for each and every apartment unit on or before September 2, 1985, with the tenants' obligation to pay rent to be suspended if the defendant failed to comply, and (6) to take adequate measures to eliminate vermin infestation in the units. The plaintiff class agreed to waive "all claims for compensatory and punitive damages." The stipulation did not mention attor-

ney's fees. The court later rendered judgment in accordance with the stipulation on June 30, 1988.[1]

On June 30, 1986, and July 8, 1986, the plaintiffs filed motions for attorney's fees and costs. Relying on General Statutes § 42-110g (d), the plaintiffs requested that the court award a total of $25,611.45 for attorney's fees and costs. After a hearing, the trial court denied the motions, holding that the plaintiffs were not entitled to an award of attorney's fees because there was neither contractual nor statutory authorization for such an award. The court found that there was no contractual authorization for the award because the parties' stipulation did not evince any agreement by the defendant to pay the plaintiffs' attorney's fees. There was no statutory authorization for the award, the court held, because there had to be a judgment on the merits following litigation of the issues in order for the court to award attorney's fees under General Statutes § 42-110g (d), and in this case there was only a stipulated judgment.

The trial court's finding that the parties did not agree in the stipulation about whether the defendant would pay the plaintiffs' attorney's fees is not at issue in this appeal. The sole question before us is whether the trial court erred in denying the plaintiffs' motions for attorney's fees and costs on the basis that General Statutes § 42-110g (d) does not authorize an award of fees and costs when a case is concluded by stipulated judgment rather than by a judgment rendered on the merits after full litigation of the issues. We find error.

---

[1] The parties entered into another stipulation on October 29, 1985, after the plaintiffs filed a motion for contempt based on the defendant's alleged failure to properly exterminate vermin and its attempt to obtain full rental payments from class members without obtaining certificates of apartment occupancy. In the stipulation, the parties agreed to a revised schedule for extermination. The court rendered judgment on this stipulation on June 30, 1988.

General Statutes § 42-110g (d) specifically provides for awards of attorney's fees in certain class actions brought under § 42-110g: "In a class action in which there is no monetary recovery, but *other relief is granted on behalf of a class,* the court may award, to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney's fees." (Emphasis added.)[2] The statute does not expressly condition the plaintiffs' ability to seek and receive an award for attorney's fees and costs on the obtaining of a judgment rendered after full adversarial litigation on the merits. By the clear terms of the statute, attorneys representing a plaintiff class on whose behalf "relief is granted" may, in the court's discretion, recover attorney's fees and costs.

Our review of the purposes of CUTPA generally, and of the provisions permitting awards of costs and attorney's fees in particular, also convinces us that the legislature did not intend to distinguish, for purposes of attorney's fees awards, between a judgment rendered after litigation on the merits and one entered in accordance with a stipulated agreement reached by the parties. The policy behind CUTPA is to encourage litigants to act as private attorneys general and to bring actions for unfair or deceptive trade practices. *Gill* v. *Petrazzuoli Bros., Inc.,* 10 Conn. App. 22, 33, 521 A.2d 21 (1987). To effectuate that policy, the legislature encourages attorneys to accept and litigate CUTPA cases by providing, in General Statutes § 42-110g (d), for awards of attorney's fees and costs. *Gill* v. *Petrazzuoli Bros., Inc.,* supra. To hold as a matter of law that attorney's fees are available in a class action under § 42-110g (d) only when plaintiffs obtain a judgment after full litigation on the merits would be to rewrite the statute

---

[2] The other relief provided for by General Statutes § 42-110g is damages and injunctive or other equitable relief, § 42-110g (d), and punitive damages, § 42-110g (a).

and, potentially, to frustrate its remedial purpose. The legislature has expressly provided the principle of construction which it intends should guide us in interpreting the provisions of CUTPA. General Statutes § 42-110b states the intention of the legislature that CUTPA "be remedial and be so construed." We think that an interpretation of § 42-110g (d) which would preclude an award of costs and attorney's fees in cases concluded by stipulated judgment would contravene the express remedial purposes of CUTPA generally and undermine the specific policy behind § 42-110g (d) to encourage private vindication of the interests protected by CUTPA.

Moreover, to interpret § 42-110g (d) as barring an award of attorney's fees and costs when a case is concluded by stipulated judgment could deter CUTPA class action plaintiffs from settling before trial, thus interfering with the general policy favoring settlement of disputes. "The settlement of disputes by informal processes serves the public interest as an alternative to litigation." *Albert Mendel & Son, Inc.* v. *Krogh,* 4 Conn. App. 117, 121, 492 A.2d 536 (1985). In the absence of some clear expression of legislative intent to the contrary, we decline to read § 42-110g (d) to preclude plaintiffs who act in accord with the public interest by settling their cases from obtaining attorney's fees and costs.

Our conclusion that the trial court erred in interpreting § 42-110g does not, however, mean that the plaintiffs in this case are necessarily entitled to attorney's fees and costs. The determination of whether the plaintiffs should receive attorney's fees and costs is entrusted to the sound discretion of the trial court. General Statutes § 42-110g (d); *Gargano* v. *Heyman,* 203 Conn. 616, 622, 525 A.2d 1343 (1987). We hold only that the trial court erred in refusing to consider award-

ing fees and costs on the basis that there was no statutory authority for such an award.

There is error, the judgment denying the motion for attorney's fees and costs is set aside and the case is remanded for further proceedings to determine, in its discretion, whether the plaintiffs should receive attorney's fees and costs and, if so, in what amount.

In this opinion the other judges concurred.