[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, Walter C. Arzonetti, d/b/a Halcyon Holdings, and Jumil Industries, Inc. (the "plaintiffs"), commenced this action by writ, summons and complaint dated September 3, 1991. The complaint was revised on November 14, 1991. The revised complaint contains three counts and is the subject of the motion to strike presently before this court. The first and third counts claim relief for tortious interference with a contract and a business CT Page 6336 expectancy, respectively. In the second count the plaintiff alleges that the defendant violated the Connecticut unfair Trade Practices Act, General Statutes 42-110a, et seq. ("CUTPA").
On March 24, 1992 the defendant, Bank of Boston Connecticut filed a motion to strike the plaintiff's complaint and attached thereto a supporting memorandum. On May 11, 1992 the plaintiff filed a memorandum in opposition to the defendants motion to strike. On June 19, 1992 the defendant filed a reply memorandum.
The motion to strike is provided for in Practice Book 151-158 and is the proper means by which to test the legal sufficiency of a pleading. Ferryman v. Groton, 212 Conn. 138, 142, 561 A.2d 432
(1989). The motion to strike, "[l]ike the demurrer . . . admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in pleadings." Mingachos v. CBS Inc., 196 Conn. 91, 108, 491 A.2d 368 (1985). "The sole inquiry at this stage is whether . . . allegations, if proved, state a cause of action." Levine v. Sigel Hebrew Academy of Greater Hartford. Inc., 39 Conn. Sup. 129, 132, 471 A.2d 679 (1983). In addition the court is required to construe the facts in the complaint most favorably to the plaintiff when considering a motion to strike. Gordon v. Bridgeport Housing Auth., 208 Conn. 161, 170,544 A.2d 1185 (1988). Facts necessarily implied and fairly provable are included. Norwich v. Silverberg, 200 Conn. 367, 370,511 A.2d 336 (1986).
The defendant contends that the first and count should be stricken because the plaintiffs have failed to allege wrongful conduct sufficient to support a claim for tortious interference with a contractual relationship. Specifically, the defendant asserts that the plaintiffs have not alleged that the defendant committed fraud, or made misrepresentations to anyone, or intimidated anyone. The defendant also contends in it's reply memorandum in support of it's motion to strike that there is no factual basis alleged in the revised amended complaint to support the independant [independent] cause of action for tortious interference with a contractual relationship.
It is well settled that in order to sustain a cause of action for tortious interference with contractual relations, the plaintiff must plead and prove that the defendant acted with an improper motive. Robert S. Weiss Assoc's. Inc. v. Weiderlight, 208 Conn. 525,536, 546 A.2d 216 (1988). "`This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, CT Page 6337 intimidation or molestation . . . or that the defendant acted maliciously.'" Robert S. Weiss Assoc's Inc. v. Weiderlight, supra, 536, quoting Blake v. Levy, 191 Conn. 257, 261, 464 A.2d 52
(1983). "The burden is on the plaintiff `to plead and prove at least some improper motive or improper means' on the part of the defendants.'" Solomon v. Aberman, 196 Conn. 359, 365, 493 A.2d 193
(1985), quoting Blake v. Levy, supra, 260.
In the case at bar, the plaintiff has alleged that the defendant acted maliciously in paragraphs six and eight of the first count of the revised amended complaint. Therefore, the plaintiff has sufficiently alleged improper motive as required by Blake v. Levy and its progeny.
As for the defendants argument that the plaintiff has failed to allege a factual basis in the revised amended complaint to support the independant [independent] cause of action for tortious interference with a contractual relationship, whether a defendant acted maliciously or not is a question of intent which is a question of fact. See Quimby v. Kimberly Clark Corp., 28 Conn. App. 660, 667,613 A.2d 838 (1992); Seymour v. Carcia, 24 Conn. App. 446, 451,589 A.2d 7 (1991). Questions of fact should not be determined by the court on a motion to strike. Hughes v. National Car Rental Systems, Inc., 22 Conn. App. 586, 590, 577 A.2d 1132 (1990). Moreover, pleadings should be read broadly and realisticlly [realistically], and not narrowly and technically. Beaudoin v. Town Oil Co., 207 Conn. 575, 588,542 A.2d 1124 (1988). Thus, construing the complaint most favorably toward the plaintiff, Gordon v. Bridgeport Housing Auth., supra, 170, the plaintiffs have sufficiently alleged a cause of action for tortious interference with a contractual relationship. Therefore the motion to strike the first count of the plaintiffs' complaint is denied.
The defendant contends that the second count — the CUTPA claim — of the plaintiffs complaint should be stricken for three reasons, first, that CUTPA does not apply to banks, second that the second count of the plaintiffs does not allege any conduct by the defendant which may be characterized as "unfair" or "deceptive", and third, that the second count fails to allege more than a single isolated instance of wrongful conduct as the basis for the CUTPA claim.
The Connecticut Unfair Trade Practices Act (CUTPA) was enacted by the Connecticut General Assembly in 1973, General Statutes Section 42-110a et seq. General Statutes Section 42-110b provides CT Page 6338 that "no person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes Section 42-110a(4) defines "trade" or "commerce" as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other commodity, or thing of value in this state."
"CUTPA was designed by the legislature to put Connecticut in the forefront of state consumer protection." Heslin v. Connecticut Law Clinic of Trantolo Trantolo, 190 Conn. 510, 515, 461 A.2d 938
(1983). "The policy behind CUTPA is to encourage litigants to act as private attorneys general and to bring actions for unfair or deceptive trade practices." Hernandez v. Monterey Village Assoc's Limited Partnership, 17 Conn. App. 421, 425, 553 A.2d 617 (1989).
The standards developed by the Federal Trade Commission ("FTC") are looked to by our courts in an effort to determine what constitutes a cognizable unfair or deceptive trade practice under CUTPA. Russell v. Dean Witter Reynolds. Inc., 200 Conn. 172, 179,510 A.2d 972 (1986). CUTPA is a remedial statute and must be construed liberally in an effort to effectuate its public policy goals. Web Press Services Corporation v. New London Motors. Inc.,203 Conn. 342, 354, 525 A.2d 57 (1987).
The Connecticut Supreme Court has not addressed the issue of whether CUTPA applies to banks. See Graynor v. United Trust,216 Conn. 458, 482, 582 A.2d 190 (1990). The Court, however, has issued a decision which examines the standards to be employed in reviewing a CUTPA claim. In Connolly v. Housing Auth., 213 Conn. 354,567 A.2d 1212 (1990), the Court held that "a municipal housing authority is exempted from liability under CUTPA when it leases subsidized rental units to low income tenants." Id., at 365. In reaching this conclusion the Court relied on Russell v. Dean Witter Reynolds. Inc., supra, 180 (CUTPA is inapplicable to deceptive securities practices), and determined that CUTPA is inapplicable to transactions which are "(1) explicitly subject to a different and specifically applicable statutory remedy; and (2) not among the types of transactions to which the Federal Trade Commission Act has been applied." Id., at 354.
In the present case, the plaintiff relies on Russell v. Dean Witter Reynolds, Inc., supra, and Connolly v. Housing Auth., supra. The defendant argues that because banks are governed by pervasive CT Page 6339 statutory regulation found in state and federal laws they should not be regulated by CUTPA.
While recognizing that there is a conflict of authority in Superior Court on the issue of whether CUTPA applies to banks, the plaintiff urges this court to adopt the reasoning of Everest Inc. v. Advest Bank, 4 Conn. L. Rptr. 326 (1991) (Wagner, J.); Washington Trust Co. v. Allen Assoc's, 3 Conn. L. Rptr. 447 (1991) (Luba, J.); Bristol Savings Bank v. Sattler, 4 C.S.C.R. 351 (1989) (Aronson, J.); Peoples Bank v. Horesco, 1 C.S.C.R. 62 (1986) (Jacobsen, J.) aff'd on other grounds, 205 Conn. 319, 533 A.2d 850 (1987). These cases found that banks are exempt from CUTPA due to an express exemption from coverage under the FTCA, 15 U.S.C. § 45(a)(2).
A majority of Superior Court decisions, however, have determined that CUTPA is applicable to banks. People's Bank v. Smulley, 7 C.S.C.R. 1323 (December 14, 1992) (Leheny, J.); Andrus v. North American Bank, 3 Conn. L. Rptr. 434, 435 (April 3, 1991) (Fuller, J.); Economic Development Assoc's v. Citytrust,3 Conn. L. Rptr. 403 (1991) (Dranginis, J.); Bristol Savings v. Szydlowski,3 Conn. L. Rptr. 146 (1991) (O'Connor, J.); Ebersol McCormick v. Torrington Savings Bank, 4 C.S.C.R. 499 (1988) (Pickett, J.); Wiseman v. Westport Bank Trust, 1 C.S.C.R. 283 (1986) (Zoarski, J.). The thrust of these decisions is twofold: (1) CUTPA is a remedial statute and should be broadly construed and (2) CUTPA has no explicit exemption which precludes banks from its ambit and as such CUTPA may be found to apply to banking activities.
This conflict in the superior courts needs to be addressed in order to preserve the balance between the legislature's intent that the FTC serve as the guide for determining the scope of CUTPA and the need for CUTPA to continue as a consumer protection statute which is remedial and broadly construed. It is possible for CUTPA to apply to banks without destroying the legislature's intent that CUTPA be guided by the FTCA.
The Federal Trade Commission Act expressly exempts banks from its coverage, 15 U.S.C. Sect. 45(a)(2), thus there can be no interpretation under the FTCA on the issue of whether CUTPA applies to banks. If the Connecticut legislature wanted to directly parallel the FTCA and expressly exempt banks from the coverage of CUTPA, it certainly would have done so. "[T]he General Assembly is always presumed to know all the existing statutes and the effect that its action or non-action will have upon any one of them. Additionally, it is always presumed to have intended that effect CT Page 6340 which its action or non-action produces." Plourde v. Liburdi,207 Conn. 412, 417, 540 A.2d 1054 (1988). As such the legislature is presumed to know that the FTCA expressly exempts banks from its coverage. The legislature, however, chose not to follow this course. Instead the legislature enacted General Statutes Section42-110c which is the exception section to the CUTPA statute. This statute provides in relevant part: "Exceptions (a) Nothing in this chapter shall apply to: (1) transactions or actions otherwise permitted under law as administered by any regulatory board or officer acting under statutory authority of the state or of the United States. . . ." Thus, CUTPA has no explicit exemption which precludes banks from its ambit. Therefore, CUTPA can be found to apply to banking activity.
The defendant also contends that the second count of the plaintiffs complaint does not allege any conduct by the defendant which may be characterized as "unfair" or "deceptive." General Statutes 42-110b(a) prohibits acts or practices which may be characterized as "unfair" or "deceptive." In determining whether a practice violates CUTPA, a court should employ the following criteria:
 (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise-whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)].
Sanghari v. Paul Revere Life Ins. Co., 214 Conn. 303, 311-12,572 A.2d 307 (1990).
All three criteria need not be satisfied to support a finding of unfairness and a practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser degree it meets all three. Atlantic Ritchfield Co. v. Canaan Oil Co.,202 Conn. 234, 242, 520 A.2d 1008 (1987).
In the case at bar, the plaintiffs have alleged that the defendant intentionally, willfully and maliciously interfered with the contractual and business expectancy rights of the plaintiffs. Construing the complaint in a light most favorable to the CT Page 6341 plaintiffs these allegations address the concept of unfairness and allege unethical or unscrupulous conduct on behalf of the defendant. Moreover, in Sportsmen's Boating Corp. v. Hensley, supra, the court stated "it is difficult to conceive of a situation where tortious interference would be found but a CUTPA violation would not . . . [b]ecause the tort standard is more stringent." Id., at 476. Therefore, the defendant's motion to strike the plaintiffs' CUTPA claim on the ground that the second count does not allege any conduct by the defendant which may be characterized as "unfair" or "deceptive" is denied.
Lastly, the defendant contends that the second count of the plaintiffs complaint is legally insufficient because the second count fails to allege more than a single isolated instance of wrongful conduct as the basis for the CUTPA claim. The issue of whether a single act constitutes a CUTPA violation has yet to be resolved by the Connecticut Appellate Courts. Several Superior Courts have addressed this issue which has resulted in a split of authority. The majority of Superior Court decisions have held that a litigant does not have to allege more than a single transaction in order to bring a CUTPA cause of action. See RLG Assoc's Ltd. v. Gardner Peterson, 9 Conn. L. Rptr. 82, 83 (1993) Shaughnessy, J.); Levesque v. Kris Enterprises, 4 Conn. L. Rptr. 86 (1991) (Susco, J.) ; Metpath, Inc. v. IDS Corp., 3 Conn. L. Rptr. 349
(1991) (Aronson, J.); Ransom v. Amerlink Ltd., 3 Conn. L. Rptr. 382
(1991) (Dranginis, J.); Allison v. Widder, 1 Conn. L. Rptr. 461
(1990) (Ciofo, J.); Judge v. Housemaster of America, 2 CSCR 421
(1987) (Gill, J.); Student v. Cardascio, 2 CSCR 382 (1987) (Reynolds, J.); Connecticut Light Power Co. v. Paonessa,2 CSCR 160 (1986) (Koletsky, J.); Thompson v. Colasanto, 2 CSCR 229 (1986) (Goldstein, J.). But see Duncan v. Burnside Motors, Inc.,2 CSCR 379 (1987) (O'Neill, J.) ("legislature was not considering an isolated event to allow `civilian attorneys general' to act to correct some business advice.").
This court will follow the well reasoned decisions of the majority of the Superior Courts and hold that a litigant does not have to allege more than a single transaction in order to bring a CUTPA cause of action. Thus, for all of the above reasons the second count of the plaintiffs complaint alleges a CUTPA cause of action against the defendant. Therefore the motion to strike the second count of the plaintiffs complaint is denied.
The defendant contends that the third count of the plaintiffs' complaint should be stricken because the plaintiffs again have CT Page 6342 failed to allege wrongful conduct sufficient to support a claim for tortious interference with a business expectancy. Specifically, the defendant asserts that the plaintiffs' have not alleged improper motive on the part of the defendant. The defendant also contends in it's reply memorandum in support of the motion to strike that there is no factual basis alleged in the revised amended complaint to support the independant [independent] cause of action for tortious interference with a business expectancy.
In order to sustain a claim of tortious interference with a business expectancy, the plaintiff must plead and prove that the defendant acted with an improper motive. This requires proof that "the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously." Sportsmen's Boating Corp. v. Hensley, 192 Conn. 747, A.2d (1988), quoting Jones v. O'Connell, 189 Conn. 648, 660, 458 A.2d 355
(1983).
In the case at bar, the plaintiff has alleged that the defendant acted maliciously in paragraphs six and eight of the third count of the revised amended complaint. Therefore, the plaintiff has sufficiently alleged improper motive as required by Sportsmen's Boating Corp. v. Hensley, supra.
As for the defendants argument that the plaintiff has failed to allege a factual basis in the revised amended complaint to support the independant [independent] cause of action for tortious interference with a business expectancy, whether a defendant acted maliciously or not is a question of intent which is a question of fact. See Quimby v. Kimberly Clark Corp., supra, 667; Seymour v. Carcia, supra, 451. Questions of fact should not be determined by the court on a motion to strike. Hughes v. National Car Rental Systems Inc., supra, 590. Moreover, pleadings should be read broadly and realisticlly [realistically], and not narrowly and technically. Beaudoin v. Town Oil Co., supra, 588. Thus, construing the complaint most favorably toward the plaintiff, Gordon v. Bridgeport Housing Auth., supra, 170, the plaintiffs have sufficiently alleged a cause of action for tortious interference with a business expectancy. Therefore the motion to strike the third count of the plaintiffs' complaint is denied.
Accordingly, the defendant's motion to strike counts one, two and three of the plaintiffs complaint is denied.
DRANGINIS, J. CT Page 6343